[File No. 7032]

O. G. GLASERUD, doing business under the firm name of The H. Bendeke Company and The H. Bendeke Company and O. G. Glaserud, Individually, Respondents, v. NEVA HOFF and Frank Hoff and Neva Hoff, Appellants.

(27 NW2d 305)

Opinion filed May 14, 1947. Rehearing denied June 3, 1947

*Day, Lundberg & Stokes,* for appellants.
*T. H. H. Thoresen,* for respondents.

BURR, J. This is an action brought to recover a commission said to have been earned in the sale of real property belonging to the defendant, Neva Hoff.

The complaint alleges that the plaintiff was engaged in the business of buying and selling real estate; that the defendants solicited his services for selling certain property belonging to

them; that on the first of May, 1945, they: "listed the said property with the Plaintiff to be sold for $6300.00 including a commission to this Plaintiff in the amount of $300.00. That the Defendants promised and agreed with this Plaintiff that if he the said Plaintiff produced a buyer willing and able to buy the said property, that they the Defendants would pay to this Plaintiff the said sum of $300.00 as and for his services. That the Plaintiff did produce a buyer ready and willing to buy the said property and as this Plaintiff is informed and believes did buy the said property from the Defendants at the price agreed upon between the parties hereto.

That the Plaintiff has performed his part of said agreement, but that the Defendants have avoided this Plaintiff in the closing of said sale with the intent to defraud this Plaintiff of his commission.

That the Defendants are indebted to this Plaintiff for the services so rendered to these Defendants and as a commission for the sale of said property in the sum of $300.00."

At the time the action was commenced the defendants were nonresidents of the State. The plaintiff attached property belonging to the defendants and attempted to obtain service of the summons by means of publication.

The defendants made a special appearance to object to the jurisdiction of the court basing the same on alleged defects in the affidavit for publication; and when the objection was overruled they answered, specifically denying that they employed the plaintiff to sell the property, or made any agreement with him to that effect, and denying they were indebted to him in any sum.

The case was tried to a jury. At the close of plaintiff's case the defendants moved for dismissal of the action because of lack of jurisdiction and lack of evidence in support of plaintiff's claim and for a directed verdict to this effect. The motion was denied. At the close of the entire case the motion was renewed on the same grounds and denied. The jury returned a verdict for the plaintiff in the sum of $300. Judgment was entered accordingly and defendants moved for judgment not-

withstanding the verdict or for a new trial basing the same on alleged defects in the affidavit for the publication of the summons, the refusal of the court to grant defendants' motion to quash the proceedings, alleged errors occurring during the trial relating to the amendment of the title of the case, the denial of their motion to dismiss the action, and

"That there is no evidence showing that the Plaintiff found any purchaser willing, ready and able to purchase the house for $6300.00.

"That the evidence is insufficient to justify the Verdict in that there is no testimony or evidence in the case sufficient to show that the Plaintiff procured a purchaser who was ready, willing and able to buy the property of the Defendants on terms satisfactory to the Defendants. . . .

"That the pleadings in said action do not support any Judgment, and the Court erred in not dismissing the Plaintiff's Complaint, or directing a Verdict on Motion of the Defendants."

In the specification that the evidence was insufficient to justify the verdict appellants set forth:

"1. That the evidence does not establish that the Plaintiff was employed to sell Defendants' house.

"2. That if the Plaintiff was employed to sell the house said agency relationship had been terminated prior to the sale of the house.

.    .    .    .    .    .    .    .    .    .    .

"6. That the Verdict is against the evidence in that the evidence is uncontradicted that any listing of the property with the Plaintiff had been cancelled, and that the house was not for sale, and that the Plaintiff had been notified of such cancellation, and the sale of the house was made after the Notice of such Cancellation."

The court granted the motion notwithstanding the verdict, in so far as the defendant Frank Hoff was concerned; but denied the motion with reference to the defendant Neva Hoff and refused to grant a new trial, and also overruled an objection to the amendment of the title of the case.

314

From the order denying Neva Hoff's motion for judgment notwithstanding the verdict or for a new trial she appeals, setting forth in substance the specifications of error aforestated; and in addition the action of the court in denying the motion for judgment notwithstanding the verdict or for a new trial. To this she added other specifications of error which need not be considered here.

We have examined the record with reference to the objection to the jurisdiction of the court, based on alleged defects in the affidavit for publication of the summons and determine it is without merit. We also determine that the objection to the action of the court in permitting amendment to the title of the case is without merit.

The only specification of error we need to consider is the one based upon the ground that if any agency existed between the parties at any time the same was terminated before any sale of the property was made by the defendant.

We have set forth the contract alleged to have been made by the parties, the gist of which is that if defendants sold the property to a buyer produced by the plaintiff, and who was willing and able to buy the property, the defendant would pay the plaintiff $300 for his services, that plaintiff produced such a buyer and defendants sold the property to him for $6300, and failed to pay the $300.

The only testimony we need to consider is that of the witnesses R. C. York who was plaintiff's agent; Frank W. Brown, the purchaser; and the defendant Neva Hoff, owner of the property.

Taking the evidence in its most favorable aspect in so far as plaintiff is concerned the record shows that witness York learned the defendant Neva Hoff was considering selling the property involved; he immediately interviewed her, asked her if she were selling the property. She told him she was if she could sell some other property. He asked her what price she wanted *"and she said $6000 net to her;"* he then stated his commission for selling property was 5% so he would add $300 to the desired price if this were satisfactory to her; and she stated

it was. The proof of the agency is contained in these statements and these alone. York testified this interview about the price took place "in the first part of May," in the morning of the first day he was there. He took several prospects to examine the house and as near as he could fix the date it was about 5 P. M. of the 10th or 15th of the month that he took Frank Brown to see the place and this was about a week after he had interviewed Neva Hoff. He testified that about 8 P.M. of the day he took Brown to view the house he called at the Hoff residence and Neva Hoff told him "her boy didn't want her to sell the house and she was going to keep it. I told her that was all right. I didn't want her to sell the house and be sorry about it afterwards. I told that to Mr. Brown the following morning." In this respect, on cross-examination, he was asked: "The next morning Mr. Brown appeared at your office and stated—and you told him you no longer had the sale of that house?" To this he answered: "That she had taken it off the market."

It is clear therefore from York's testimony that if any agency relationship ever existed between the plaintiff and defendant Neva Hoff it was terminated on or about 8 P.M. of the day Mr. York took Brown to examine the house. There is no claim on the part of the plaintiff that any of the other prospects taken to view the house ever considered buying the house. All centers around the transaction with Brown. Neither is there any proof that any prospect was taken to see the house after Brown was taken there.

The plaintiff was asked: "But Mr. York came back to you and told you that Mrs. Hoff refused to have anything more to do with showing the house to any prospects, isn't that a fact?" And he answered, "Yes, the son wasn't really in favor of selling it."

Frank Brown testified that York took him to view the house about the middle of May, according to his best recollection, and while they were on this mission he asked the price and York said $6300 and, "I said it was too much, in fact I wasn't interested. He told me the house was sold in the first place to some

lady. I don't remember the name. That is all the conversation I had." Brown testified that on the morning of the next day he went to the plaintiff's office to look for Mr. York. He said, "I wanted to get the details whether the house was sold or not, and a young girl was in the office, and she told me that Mr. Hoff or Mrs., either one, I don't remember now, called in and withdrew the sale of that house." He placed the time of day he went with York to see the house as about 2:30 P.M. He said he made a deal with Neva Hoff to buy the house about twenty days after he was taken by York to see the house and paid $6000 for the property. It was stipulated that the deed was recorded May 21, 1945. There is nothing whatever in the testimony to show Brown paid more than $6000 for the property. It is clear from the testimony of York that whatever agency had existed was terminated the day Brown looked over the house, and according to Brown this was about twenty days before any deal was made between him and Neva Hoff.

The only other testimony dealing with agency and termination thereof is found in the deposition of Neva Hoff. She denied that she ever listed the property for sale by the plaintiff. She corroborated York's statements that he came to see her; that he inquired whether she wanted to sell the property; that she said "yes"; and that he asked the price and she said $6000. She placed the date as April 28. She testified that on the following Monday, (April 30) York came bringing a lady and her daughter who looked at the house; that the next day (May 1) he brought the same lady and another daughter, who stayed a few minutes; that about five minutes thereafter he brought in Brown, and they discussed selling the house but Brown had no interest in the house; that shortly after and on the same day he brought another woman; that the evening of that day he brought a Mr. and Mrs. Miller and introduced them to her and about an hour later he came back and she told him the house was not for sale. Thus, while the parties differ as to the day in May when York brought Brown to see the house they agree on this that on the evening of whatever day it was, Neva Hoff told York the house was not for sale. It was thus with-

drawn from sale by the plaintiff and is in harmony with what one of plaintiff's office force told Brown next morning.

That thereafter a deal was consummated between Brown and Neva Hoff is clear from the testimony of both of them. Brown says it was about twenty days after York took him to see the house. This would make it about twenty days after York was told the house was not for sale. Neva Hoff says that she told York on May 1 that the house was not for sale. She testified that she sold the house to Frank Brown for $6000 and that she first came to an agreement with him on the second of May; that he, on that day, "asked us to give him first chance to buy the house" and that "he left a deposit at that time."

York testified that when he took Brown out to the house, nothing was said by Brown about getting the first chance to buy, and that he left no deposit. Thus, if the request was made and the deposit left it was after the termination of the agency.

The exact day Brown was taken to see the house is not material for the evidence shows without dispute there was no deal of any kind made between Brown and Neva Hoff for the purchase of the property until after the agency was terminated, whether that was one day or twenty days after.

Plaintiff makes no claim he introduced any prospective purchaser other than Brown, though he brought several people to inspect the house. There is an utter lack of proof to show the defendant agreed to pay him $300 commission if a sale was made to anyone for $6000 and no more, and the testimony shows without dispute that Brown told York $6300 was too much and so he was not interested in the house.

The motion for judgment notwithstanding the verdict should have been granted. We do not consider any of the other objections that were raised.

As stated in First Nat. Bank v. Henry, 30 ND 324, 336, 152 NW 668, 672: "It follows from what has been said that it was error to render judgment against the defendant. The judgment appealed from is reversed, and inasmuch as the evidence affirmatively discloses that the facts necessary to constitute a cause of action do not exist, the District Court is directed to

enter final judgment in favor of the defendant, and against the plaintiff, dismissing the action, with costs."

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.